**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROLANDO LOPEZ SALAS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>LUIS SOTO, et al.,<br><br>　　　　　Respondents. | Civil Action No. 25-17339 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court on Petitioner's habeas petition (ECF No. 1) and motion for a temporary restraining order (ECF No. 10) challenging his ongoing immigration detention. Following an order to answer, the Government filed responses to the petition and motion (ECF Nos. 5, 12), to which Petitioner replied (ECF Nos. 6, 13-14). For the following reasons, Petitioner's habeas petition shall be granted to the extent that Petitioner shall be afforded a bond hearing under 8 U.S.C. § 1226(a), and his motion seeking a temporary restraining order shall be denied as moot in light of the granting of the petition.

**I.　BACKGROUND**

　　Petitioner is a native and citizen of Nicaragua. (ECF No. 1-1 at 23.) On October 18, 2021, Petitioner crossed the Rio Grande River near Eagle Pass, Texas, and presented himself to immigration officials to seek asylum. (ECF No. 1 at 8; ECF No. 8-1.) Petitioner was taken into custody, and immigration officials determined that Petitioner was not entitled to entry into the United States and was instead subject to the expedited removal process of 8 U.S.C. § 1225(b).

(ECF No. 8-1.)  Because Petitioner expressed a fear of return to his home country, he was not issued a final expedited removal order at that time, but was instead referred for a credible fear interview.  (ECF No. 8-1; ECF No. 1-1 at 15.)  On October 22, 2021, Petitioner was "released" by border officials pursuant to "the authority contained in [8 U.S.C. § 1226] and part 236 of title 8, Code of Federal Regulations."  (ECF No. 1-1 at 27.)  Following this release, Petitioner initially went to California, where, on November 1, 2021, the Government provided Petitioner with documents that indicated that the Government had granted him humanitarian parole into the United States pursuant to its discretionary humanitarian parole authority under 8 U.S.C. § 1182(d)(5)(A).  (ECF No. 1-1 at 4.)  Petitioner was informed in that document that his parole was discretionary in nature and could be terminated "at any time and for any reason" in the Government's discretion.  (*Id.*)

Petitioner filed paperwork seeking asylum, but that application was eventually denied in light of Petitioner's initial finding of inadmissibility.  (ECF No. 1-1 at 12.)  Petitioner was thereafter instructed to appear for a credible fear interview to be held on September 23, 2025.  (*Id.* at 15.)  Following that interview, at which Petitioner was found to have a credible fear of return to his home country, Petitioner was arrested and taken back into custody, and his parole was revoked.  (ECF No. 1 at 10.)  Petitioner has remained in immigration custody since that time.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2241(c), a federal court has jurisdiction over a habeas petition and habeas relief may be extended to a petitioner only if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.   DISCUSSION

Petitioner challenges his ongoing immigration detention without a bond hearing, which he asserts can only lawfully arise under 8 U.S.C. § 1226(a). The Government contends that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1). Aliens who attempt to enter the United States illegally and who are detained shortly after making an unlawful crossing of the border are treated as applicants for admission and are subject to the terms of § 1225(b)(1). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020). As the Third Circuit has explained,

> [u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States,' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border.

*Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to this provision will generally be issued an expedited removal order unless they indicate to immigration officers that they have a credible fear of persecution should they be deported, in which case they may be referred for further proceedings. *Id.* Pursuant to the statute, aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout removal or credible fear proceedings. In its discretion, however, the Government may temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's credible fear or removal proceedings, after which an alien would have a final order of removal and detention under the statute ends. *Id.* at 300-03.

Section 1226(a), instead, provides that an alien already present in the United States who is subject to removal proceedings "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." When the Government takes an alien into custody

3

under this statute, however, the alien is entitled to seek release on bond through a hearing before an immigration judge at which the alien bears the burden of showing that they are neither a flight risk nor a danger to the community. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018). Aliens taken into custody within the United States after having entered and remained in the United States for several years are therefore generally entitled to a bond hearing under the statute. *See, e.g.*, *Aguilar Ramos v. Soto*, No. 25-15315, 2025 WL 3251447 (D.N.J. Nov. 21, 2025).

Here, the parties dispute whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). Here, Petitioner presented himself to immigration officials shortly after crossing the Rio Grande at a border crossing station. Petitioner was originally encountered within fourteen days of illegally crossing the border and within 100 air miles of the border. Petitioner, therefore, was at that time subject to the expedited removal provisions of § 1225(b)(1). *Castro*, 835 F.3d at 425. Indeed, the Government clearly considered Petitioner subject to the statute as the Government issued Petitioner a determination of inadmissibility on a notice and order of expedited removal form. (ECF No. 8-1.) That Petitioner was paroled would not change the applicability of section 1225(b)(1) and its mandatory detention requirements with respect to him. *See Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *2-3 (D.N.J. Jan. 8, 2026). As this Court explained in *Faqirzada*,

> Even where an alien is granted humanitarian parole prior to a final decision on his removal proceedings, he does not cease being subject to § 1225(b)(1). As the parole statute makes clear,
>
>> such parole of an alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall

4

> continue to be dealt with in the same manner as that
> of any other applicant for admission.
>
> 8 U.S.C. § 1182(d)(5)(A). Aliens who are paroled are thus subject to the "entry fiction" in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude. *See, e.g.*, *Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *6 (D.N.J. Jan. 29, 2018); *see also Pipa-Aquise v. Bondi*, No. 25-1094; 2025 WL 2490657, at * 1-2 (E.D. Va. Aug. 5, 2025). Federal courts generally lack jurisdiction to review the exercise of discretion embodied in the Government's decisions to grant or deny parole. *See Ashish v. Att'y Gen.*, 490 F. App'x 486, 487 (3d Cir. 2013) (citing 8 U.S.C. §§ 1182(d)(5)(A) & 1252(a)(2)(B)(ii)).

*Faqirzada*, 2026 WL 63614, at *2-3. Aliens who are paroled from mandatory detention thus remain subject to mandatory determination when their parole is terminated. Upon the Government's discretionary decision to terminate parole, aliens are to be returned to custody and detained throughout their proceedings as if they had remained at the border throughout the entirety of their parole. *Id.*

It is clear, then, that if Petitioner had been released from mandatory detention through the Government's humanitarian parole authority under § 1182(d)(5)(A), Petitioner would now continue to be subject to mandatory detention under § 1225(b)(1). *Faqirzada*, 2026 WL 63614, at *2-3. That, however, is not what actually happened in Petitioner's case. Instead, on October 22, 2021, several days before the Government decided that Petitioner was entitled to parole, Petitioner was outright released from detention by the Government pursuant to its authority under 8 U.S.C. § 1226(a). (ECF No. 1-1 at 27.) Although that decision was at least partially based on concerns related to COVID-19 (*see id.* at 28), and a since reversed and vacated injunction entered by the Central District of California, *see Fraihat v. U.S. Immigration & Customs Enforcement*, 16 F.4th 613 (2021), the fact remains that Petitioner was, in fact, released from custody *prior* to the decision to grant him humanitarian parole. Indeed, Petitioner was not granted humanitarian parole until

5

November 1, 2021, ten days after his release. (ECF No. 1-1 at 4-5.) Thus, while 8 U.S.C. § 1182(d)(5)(A) does require that, upon the termination of his parole, Petitioner be returned "to the custody from which he was paroled," Petitioner was not in mandatory detention at the time of his parole. Instead, he was released pursuant to 8 U.S.C. § 1226(a).

Thus, in Petitioner's case, following the termination of his parole, the only detention to which he could be returned is the detention to which he was potentially subject at the time of his parole – detention under § 1226(a), the statute under which he had been released. Pursuant to that section, Petitioner is entitled to a bond hearing before an immigration judge at which he must be provided the opportunity to show that he is neither a danger to the community nor a flight risk. *Borbot*, 906 F.3d at 278-79. The appropriate remedy in this matter is therefore not the outright release that Petitioner seeks, but rather a bond hearing. *See Aguilar Ramos*, 2025 WL 3251447, at * 1-2. Petitioner's habeas petition shall therefore be granted, and the Government shall provide him with a bond hearing within seven days.[1] Because the petition shall be granted to the extent that Petitioner shall be provided a bond hearing pursuant to 8 U.S.C. § 1226(a), Petitioner's motion seeking a temporary restraining order as to his continued detention under § 1225(b)(1) shall be denied as moot.

## IV.   CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **GRANTED**, Petitioner shall be provided with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days, and Petitioner's motion seeking a temporary restraining order (ECF

---

[1] To the extent Petitioner contends that the Government's decision to terminate his parole and take him into custody of any kind was improper, this Court lacks the authority to review the discretionary decision to terminate parole. *See Ashish*, 490 F. App'x at 487; *Doe*, 2018 WL 620898, at *8; *see also* 8 U.S.C. §§ 1182(d)(5)(A) (decision to terminate humanitarian parole is in the Government's discretion) & 1252(a)(2)(B)(ii) (habeas courts have no jurisdiction to consider challenges to such discretionary decisions in the immigration context).

No. 10) is **DENIED** as moot in light of the granting of his petition. An order consistent with this Opinion will be entered.

						_____
						**MICHAEL A. SHIPP**
						**UNITED STATES DISTRICT JUDGE**

Dated: February __21st__, 2026